IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BLAINEY E.,[1]

              Plaintiff,                              **Civ. No. 6:21-cv-00737-MC**

       v.                                  **OPINION AND ORDER**

**COMMISSIONER, SOCIAL SECURITY**
**ADMINISTRATION,**

              Defendant.

_____

**MCSHANE, Judge**:

      Plaintiff brings this action for judicial review of the Commissioner of Social Security's

final decision denying her application for supplemental security income ("SSI") under the Social

Security Act. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff filed

an application for SSI on December 22, 2016, alleging a disability onset date of May 23, 2003.

Pl.'s Br. 1, ECF No. 16. Plaintiff's claim was denied initially and upon reconsideration. *Id.* at 1–

2. Plaintiff requested a hearing and amended her alleged onset date to December 22, 2016. *Id.* at

2. Following a hearing, an administrative law judge ("ALJ") issued an unfavorable decision. Tr.

46–62.[2] The Appeals Council denied Plaintiff's request for review, making the ALJ's decision

the final decision of the Commissioner. Tr. 1–4. This appeal followed.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the
non-governmental party.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

Plaintiff argues the ALJ erred by discounting her subjective symptom testimony, rejecting the medical opinion of Monica DeMasi, M.D., and rejecting lay witness testimony. Pl.'s Br. 17. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence in the record, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the Court reviews the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests on the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant can adjust to other work after

considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

At step two here, the ALJ found that Plaintiff had the following severe impairments: peripheral neuropathy, PTSD, right shoulder degenerative joint disease, hernia, seizure disorder, chronic kidney disease, major depressive disorder, bipolar II disorder, and bilateral carpal tunnel syndrome. Tr. 52. The ALJ determined that Plaintiff's other conditions—obesity, diabetes mellitus, hypertension, gastroesophageal reflux disease (GERD), hypothyroidism, hyperlipidemia, apnea, migraines, methamphetamine abuse, diabetic retinopathy, and bulimia nervosa—were not severe because there was no link in the evidence between these conditions and any significant work-related limitations. Tr. 52–53.

Next, the ALJ formulated Plaintiff's RFC. A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ found that Plaintiff had the capacity to perform light work with further limitations as follows:

> [Plaintiff] can occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds. [Plaintiff] can sit for 6 hours of an 8-hour day and stand and/or walk in combination for no more than 6 hours of an 8-hour workday. [Plaintiff] can push and pull as much as she can lift and carry. Overhead reaching with the right upper extremity is limited to occasionally; reaching in every other direction with the right upper extremity is limited to frequently. The ability to climb ramps and stairs can be done occasionally, but [Plaintiff] should avoid ladders, ropes, or scaffolding. [Plaintiff] may stoop, kneel, crouch, and crawl frequently but not constantly. [Plaintiff] should avoid hazards such as unprotected heights and moving mechanical parts, and should never operate a motor vehicle for commercial purposes. The ability to understand, remember, and carryout instructions is limited to performing simple, routine tasks, reasoning level 2 or less. Use of judgment is limited to simple work-related decisions. Dealing with changes in a workplace setting would be again limited to making simple work-related decisions. Interaction

with supervisors, coworkers, and the general public can be done occasionally. [Plaintiff]'s time off-task would be able to be accommodated by normal breaks.

Tr. 55. Based on the vocational expert's testimony, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy, including housekeeping cleaner, cafeteria attendant, and small parts assembler. Tr. 61. The ALJ therefore determined that Plaintiff was not disabled. Tr. 62.

## I. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred by not fully crediting her subjective symptom testimony as true. Pl.'s Br. 18. Absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). But the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). When evaluating the claimant's testimony as to the severity of her symptoms, the ALJ considers several factors, including:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). However, an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). Ultimately, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, [this Court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff testified to various debilitating physical symptoms, including pain and numbness in her hands and feet, seizures, migraines, vision problems, and gastroparesis, as well as panic attacks, depression, and anxiety. Beginning with her physical impairments, Plaintiff testified that she experiences constant pain and numbness in her feet that precludes her from walking anywhere. Tr. 116. There is no movement in two of her toes on her right foot and she cannot go up stairs. Tr. 112, 117. She can't stand or sit for a long period of time due to back pain and spends about four hours a day laying down. Tr. 120, 122. She experiences numbness in her hands and fingertips as well, which causes her to drop a lot of things. 116. She has problems with trigger fingers and has had two surgeries, but the problem continues to get worse. Tr. 116–17. Plaintiff has a live-in aide and caretaker that help her with cooking, cleaning, transportation, errands, and personal care. Tr. 112–14. Plaintiff takes medication for frequent migraines and seizures but they are not controlled. Tr. 114, 118. Plaintiff testified that she has extreme problems with her vision, with difficulty seeing during the day and at nighttime because of retinopathy. Tr. 118–19. She often throws up from eating certain foods due to her gastroparesis. Tr. 122.

As to her mental health, Plaintiff sees a therapist and takes medication for depression. Tr. 119. She testified that she still experiences significant anxiety and panic attacks while on

medication. Tr. 119–20. When she tries to go in public to grocery shop with her aide, she will start having a panic attack after ten minutes and leave. Tr. 120. She only leaves her home to go grocery shopping and to doctor appointments. *Id.* During the day, she tries to read in large print, watch tv, relax with her dog, and talk with her caregivers. *Id.*

The ALJ discounted Plaintiff's symptom testimony as inconsistent with (1) the objective medical evidence, (2) Plaintiff's noncompliance with medical treatment and advice, and (3) Plaintiff's activities. Tr. 57–59. Regarding her hand symptoms, the ALJ noted that recent imaging showed moderate carpal tunnel syndrome of the left and moderately severe carpal tunnel on the right, as well as pain in the right hand and stiffness in the left hand resulting in reduced grip strength. Tr. 57. The ALJ acknowledged that Plaintiff was given splints to wear at night, and noted improvement in her symptoms with cortisone injections. *Id.* The ALJ found, however, that Plaintiff's testimony regarding the severity of her symptoms was inconsistent with the objective evidence. *Id.* The ALJ pointed to exams that showed intact sensation despite Plaintiff's claims of being unable to feel heat while cooking due to numbness. *Id.* He referred to a recent exam note that showed full elbow flexion, elbow extension, wrist extension, finger abduction, and finger flexion in both upper extremities despite Plaintiff's reports otherwise. *Id.* He further noted that the vast majority of exams revealed normal findings relating to Plaintiff's upper extremities, including no musculoskeletal tenderness, no edema, full strength, and full range of motion. *Id.*

Regarding Plaintiff's inability to walk or stand due to her neuropathy, the ALJ noted Plaintiff's difficult circumstances in 2016 involving homelessness and unstable food source, which contributed to her uncontrolled diabetes. Tr. 57. He further noted recent findings of severe length dependent axonal polyneuropathy caused by Plaintiff's history of poorly controlled diabetes. Tr. 57, 1194. The ALJ accordingly limited Plaintiff to light work with no exposure to hazards and

reduced climbing. *Id.* The ALJ found that no further limitations were warranted, however, due to Plaintiff's pattern of noncompliance with medical treatment and advice, mostly normal physical exams, and activities consistent with a range of light work. Tr. 57–58. The ALJ again noted several of Plaintiff's physical exams that failed to document notable deficits in Plaintiff's upper or lower extremities, reflecting normal gait, no musculoskeletal tenderness, no edema, and a full range of motion. Tr. 58. The ALJ also found that Plaintiff has been "repeatedly non-compliant with medical advice when her symptoms were exacerbated, inevitably leading to worse control over her symptoms." *Id.* Finally, the ALJ found Plaintiff's activities of rearranging her kitchen, walking in her yard, and gardening as consistent with light work. *Id.*

The ALJ next found that recent records included little mention of Plaintiff's seizures despite her testimony that they occur multiple times a month, and the record instead indicates improvement in her seizures. Tr. 58. He therefore limited Plaintiff's exposure to climbing and hazards, including operating a vehicle. *Id.* As to Plaintiff's mental health symptoms, including anxiety and panic attacks, the ALJ limited Plaintiff to simple tasks, simple work-related decisions, occasional workplace changes, and occasional social contact. *Id.* He found that no further limitations were warranted, however, due to Plaintiff's mostly normal mental status exams, her adequate performance on testing, her failure to seek appropriate treatment, and her level of activity. *Id.* The ALJ referenced Plaintiff's normal mood, thought content, judgment, cognition, and memory in most of her exams. *Id.* He went on to note that at her psychological exam, Plaintiff was oriented with intact cognition and memory, had average attention span, and performed poorly on math-related tasks. *Id.* She was cooperative throughout the session and her interpersonal skills were intact. *Id.* The ALJ went on to explain that Plaintiff "maintains this level of functioning despite a history of very poor follow-through on therapy appointments and since that time, her

mental health appears to have only improved." *Id.* The ALJ noted that Plaintiff reported doing better with medication management and recently obtained custody of her children. Tr. 58–59.

Plaintiff argues that the ALJ failed to consider the record as a whole regarding Plaintiff's various symptoms. She contends that the ALJ ignored evidence showing Plaintiff's hand numbness and reduced grip-strength; and failed to identify sufficient instances of medical noncompliance concerning her diabetes and neuropathy. Pl.'s Br. 20–24. She further contends that the ALJ failed to explain how Plaintiff's seizures, even if occurring only once a month, could be accommodated in a full-time competitive work setting. *Id.* at 25. Plaintiff next argues that the ALJ ignored evidence regarding the severity of her mental illness, failing to consider her testimony regarding migraines. *Id.* at 25–27.[3]

The ALJ discounted Plaintiff's symptom testimony for clear and convincing reasons supported by substantial evidence in the record. Beginning with Plaintiff's uncontrolled diabetes and resulting conditions (including neuropathy and kidney disease) the record is replete with instances of Plaintiff's failure to follow medical advice, failure to follow up with treatment, and failure to adequately monitor her condition. *See* tr. 529, 545–46 (5/3/15: ongoing issues with medical compliance and drug use; left hospital against medical advice when she was told she wouldn't receive IV pain medications); tr. 972 (4/29/16: Plaintiff declined social worker services and refused blood testing); tr. 570 (7/16/16: Plaintiff admitted to hospital for acute renal failure;

---

[3] Plaintiff argues that the ALJ erred by relying on Plaintiff's activities to discredit her symptom testimony. Pl.'s Br. 24, 27. An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina*, 674 F.3d at 1112 (quoting *Lingenfelter*, 504 F.3d at 1040). The ALJ here noted that, despite Plaintiff's complaints of being unable to stand, walk, or hold items, Plaintiff reported walking in her yard and gardening for exercise, as well as rearranging her kitchen. Tr. 58. He also noted that Plaintiff recently obtained custody of her children. Tr. 59. The ALJ simply found these activities more consistent with a light range of work rather than Plaintiff's alleged debilitating level of functioning. He did not err by considering Plaintiff's activities as part of his evaluation of Plaintiff's symptom testimony. And even if it were error, it is harmless because the ALJ provided other valid reasons to discount Plaintiff's symptom testimony. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that an error in an ALJ's subjective symptom analysis is harmless where an ALJ provides at least one valid reason for discounting testimony).

left against medical advice after 7 hours of being admitted due to her dogs being in her car); tr. 974 (7/26/16: Plaintiff with recent infection and out of control sugars refusing all care due to concerns about her dogs); tr. 594 (8/14/16: Plaintiff complained of ongoing back pain; admission to hospital not warranted; Plaintiff unwilling to use new prescription of insulin and walked out of emergency department); tr. 473 (9/28/16: Plaintiff with history of no shows for appointments); tr. 1002 (11/23/16: Plaintiff with uncontrolled diabetes and wound on right second toe but refuses admission due to concerns about her dog); tr. 1003 (3/7/17: Plaintiff got an apartment about 1 week ago; hasn't been to diabetes education lately; has a disability services caregiver; getting first visit with kids next week); tr. 1007 (4/5/17: ulcer on second right toe, "still with poor hygiene of feet); tr. 922 (4/19/17: two toe ulcers but not interested in surgery); tr. 1244 (6/19/17: Plaintiff does not report following a diabetic diet); tr. 1289 (8/7/17: Plaintiff refused medical assistance in managing her insulin and "insists on managing her own pump"); tr. 1271–72 (8/8/17: diabetes type I "poorly controlled" and "complicated by [Plaintiff's] poor compliance;" Plaintiff non-compliant with medical care; "it has been quite difficult to care for her as she has been refusing some meds/treatments"); tr. 1350 (8/9/17: Plaintiff left hospital against medical advice, not wanting to wait for further monitoring); tr. 1027 (5/22/18: Plaintiff had osteomyelitis of second right toe last year but did not get recommended surgery); tr. 1030 (5/22/18: Plaintiff not interested in pursuing treatment or imaging for osteomyelitis of toe; feels ok on current mental health medication); tr. 1039 (6/20/19: Plaintiff was referred to gastrointestinal for vomiting issues but never went due to scheduling issues).

The Court, like the ALJ, recognizes that Plaintiff's challenging circumstances during 2016 made controlling her diabetes difficult. *See* tr. 980 ("Diabetes has been extremely challenging to control given social situation and her lack of resources for self care."); tr. 1005 ("Chronic

homelessness has really impaired my ability to care for her, now with stable home and food, hope we will be able to control her disease better"). But as demonstrated above, even after Plaintiff obtained stable housing in early 2017, she continued to act against medical advice. *See* tr. 1006 ("Has had better access to food and more consistent meals now that has housing;" living independently now; has been able to see kids again now). The ALJ concluded that Plaintiff's neuropathy symptoms developed as a result of Plaintiff's poorly controlled diabetes, and limited Plaintiff to light work with no exposure to hazards and reduced climbing to accommodate her impairment. Tr. 57. While Plaintiff testified that she is completely unable to stand or walk due to neuropathy, the ALJ found her testimony inconsistent with repeated instances of medical noncompliance which led to exacerbating symptoms, as well as numerous exams that failed to document notable deficits in Plaintiff's upper or lower extremities. Tr. 57–58. These are clear and convincing reasons to discount Plaintiff's testimony as to the severity of her symptoms.

Regarding her hands and arms, Plaintiff testified she was unable to hold or feel items due to numbness and pain in her fingers and hands, as well as having trigger fingers in all fingers despite surgery. Tr. 116–17. In June 2020, Plaintiff was assessed with bilateral carpal tunnel syndrome, likely mild to moderate, right small trigger finger, and stiffness of the left hand. Tr. 1191–92. She was referred for nerve conduction studies, given carpal tunnel splints, and received a cortisone injection for her right finger. *Id.* Nerve conduction studies showed moderate carpal tunnel syndrome on the left and moderately severe carpal tunnel syndrome on the right. Tr. 1177. A month later in July 2020, Plaintiff's "trigger fingers ha[d] completely resolved" and the stiffness in her hands was improving. Tr. 1192, 1194. Plaintiff's doctor wanted to hold off on carpal tunnel surgery and instead gave Plaintiff a cortisone injection. Tr. 1195. The ALJ acknowledged Plaintiff's carpal tunnel syndrome and limited Plaintiff to light work with reduced lifting, carrying,

and climbing, no exposure to hazards, and reduced reaching on the right. Tr. 55, 57. But he found the severity of Plaintiff's alleged symptoms inconsistent with several of Plaintiff's exams. The ALJ first noted that cortisone injections improved symptoms in Plaintiff's hands. Tr. 57. Additionally, though Plaintiff's exams noted numbness, stiffness, and decreased grip, her sensation was intact, and she had full fist and full extension of all digits bilaterally. Tr. 1191, 1194. Further, despite Plaintiff's claims of being unable to hold even a pan or gallon of milk, she had full range of motion and 5/5 shoulder abduction, elbow flexion, elbow extension, wrist extension, finger abduction, and finger flexion in both upper extremities. Tr. 1175. The ALJ went on to note several of Plaintiff's exams that failed to document notable deficits in Plaintiff's upper extremities, generally showing normal gait, no musculoskeletal tenderness, no edema, full strength, and full range of motion. Tr. 57. The ALJ did not err in discounting Plaintiff's testimony based on these inconsistencies.

Regarding Plaintiff's seizures, there is little mention in the record of Plaintiff's seizures aside from her self-reports and medication management. *See* tr.  456 (2/4/16: Plaintiff has seizures every few weeks, has been off medication); tr. 914 (4/11/17: Plaintiff found unconscious at store secondary to hypoglycemia; unremarkable physical exam); tr. 1026, 1029 (5/22/18: Plaintiff gets seizures about 1x/month; seems triggered by stress; offered to increase medication, Plaintiff declined; "she is happy with her seizure control at this time"); tr. 1030 (9/27/18: seizures have been worse last several months; wants to go up on medication); tr. 1033, 1035 (12/13/18: three seizures in the last week; doctor added Keppra medication); tr. 1036, 1039 (3/22/19: started Keppra, thinks it helped somewhat; "still getting seizures which seem triggered by severe stress of interacting with a neighbor who is sexually harassing her"); tr. 1204 (7/31/20: Plaintiff reports seizures have been better). There are no records from a neurologist, though Plaintiff was referred

several times, and recent records show that Plaintiff's seizures are controlled. The ALJ appropriately limited Plaintiff's exposure to climbing and hazards, including operation of a vehicle, to accommodate her seizures. Tr. 58. Similarly, the record does not reflect that Plaintiff's migraines are as severe as alleged, and there are no records showing that Plaintiff saw a neurologist for migraines despite multiple referrals.[4] *See* tr. 979 (8/16/16: migraines likely triggered by high level of stress, poor sleep, and inconsistent nutrition); tr. 496 (3/3/17: migraines up to 2x per day but not taking medication); tr. 1017 (4/24/17: Plaintiff pregnant, having 2-3 migraines per week; referred to neurology); tr. 1203 (7/28/20: Plaintiff went to emergency room for migraine; doctor said appears to be a muscular headache; she reported being told to get fluids and pain medication but doctor felt fluid was not clinically indicated); tr. 1415 (8/14/20: migraines are 50% better).

As to Plaintiff's mental health, the Court recognizes that Plaintiff has a severe mental health impairment due to traumatic past experiences. However, the record shows limited mental health treatment and poor follow-through on therapy appointments. *See* tr. 981 (9/23/16: Plaintiff declines psychiatry consult; poor follow through with Lane County Mental Health even though they felt they have "bent over backward to try to meet her needs"); tr. 1001 (10/4/16: Lane County Mental Health has multiple documents showing Plaintiff has refused services); tr. 498 (3/3/17: doctor "strongly encouraged" Plaintiff to reach out for mental health services now that she has housing); tr. 1039 (6/20/19: Plaintiff has been doing better emotionally; "friends have been really supportive, has been doing a lot of day trips"); tr. 1189 (5/5/20 PTSD with insomnia, worsened by coronavirus crisis); tr. 70–81 (biopsychosocial assessment with diagnoses of PTSD, OCD, anxiety, agoraphobia).

---

[4] Plaintiff argues the ALJ failed to consider her testimony regarding migraines. Pl.'s Br. 27. The ALJ determined that Plaintiff's migraines were not severe. Tr. 53. He found no link in the evidence between Plaintiff's migraines and any significant work-related limitation based on Plaintiff's sparse treatment for migraines, her failure to follow up with neurology, and recent records indicating significant improvement with medication. Tr. 52–53.

Further, as the ALJ noted, Plaintiff's mental status exams largely reveal normal mood, thought content, judgment, cognition, and memory. Tr. 58. In May 2017, Plaintiff underwent a psychological evaluation which revealed diagnoses of PTSD, major depressive disorder of moderate severity, and specific learning disorder in mathematics. Tr. 901. Her mood was moderately anxious, and she had trouble performing mathematical calculations. Still, despite Plaintiff's mental health diagnoses, her cognition and memory were intact, and she demonstrated no unusual deficits in persistence or pace. Tr. 900–01. Plaintiff's attention span was average, and she understood short, direct instructions. Tr. 900. Plaintiff's "interpersonal skills were intact, though colored by anxiety," and she was cooperative throughout the session. Tr. 901. The ALJ acknowledged Plaintiff's mental health symptoms and limited her to simple tasks, simple work-related decisions, occasional workplace changes, and occasional social contact. Tr. 58. He did not err in discounting the severity of Plaintiff's symptoms as inconsistent with Plaintiff's limited mental health treatment, poor follow-through with therapy, and largely normal mental status exams.

Overall, while Plaintiff offers an alternate interpretation of the evidence, the ALJ provided clear and convincing reasons for discounting Plaintiff's symptom testimony supported by substantial evidence in the record. *See Batson*, 359 F.3d at 1193. Further, the ALJ properly accounted for Plaintiff's impairments in the RFC. Accordingly, the ALJ's evaluation of Plaintiff's symptom testimony is affirmed.

## II. Medical Opinion

Plaintiff argues that the ALJ improperly rejected the medical opinion of her primary care provider, Monica DeMasi, M.D. Pl.'s Br. 10. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). Generally, a treating physician's opinion is entitled to more weight than an examining physician's opinion, which in turn is entitled to more weight than a reviewing physician's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). When a treating physician's opinion is contradicted by another medical opinion, the ALJ may reject the opinion of a treating physician only by providing "specific and legitimate reasons supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Dr. DeMasi completed a treating source statement in May 2020. Tr. 1167–71. In the description of Plaintiff's symptoms, Dr. DeMasi included seizures and migraines three times a week, numbness, pain, and tingling in the hands and feet, poor vision, panic attacks and agoraphobia, and abdominal pain. Tr. 1167. Dr. DeMasi opined that Plaintiff is limited to sitting for six hours a day and standing and walking for zero hours a day. Tr. 1169. She opined that Plaintiff would need breaks every 20 minutes during the workday. *Id.* She limited Plaintiff to never lifting or carrying. *Id.* When asked for the percentage of time during a workday that Plaintiff could use her hands, fingers, and arms, for grasping objects, fine manipulation, and reaching, Dr. DeMasi listed zero percent for both the right and left upper extremity. Tr. 1170. Dr. DeMasi further opined that Plaintiff would need to periodically elevate her legs in an 8-hour period due to foot swelling. *Id.* Dr. DeMasi concluded that Plaintiff would miss more than four days of work per month due to her "multiple complex severe medical conditions," and opined that she does not believe Plaintiff is "capable of working at all." Tr. 1171.

The ALJ gave Dr. DeMasi's opinion no weight because "her findings are not well supported." Tr. 59. The ALJ explained that while Dr. DeMasi cited to various maladies in support of Plaintiff's limitations, including Plaintiff's neuropathy, poor vision, and panic disorder, "these impairments resulting in the extreme limitations assessed is simply not consistent with the record as a whole." *Id.* The ALJ referred to numerous exams where Plaintiff exhibited normal gait, no musculoskeletal tenderness, no edema, and full range of motion, as well as normal mood, thought content, judgment, cognition, and memory. *Id.* Specifically regarding Dr. DeMasi's upper extremity limitations, the ALJ noted that in July 2020, Plaintiff had full strength in both shoulders and full elbow flexion, elbow extension, wrist extension, finger abduction, and finger flexion in both upper extremities, "despite contrary contemporaneous subjective reports." *Id.* Finally, the ALJ noted Dr. DeMasi's opinion that Plaintiff meets the criteria for mental disability, giving it no weight as an issue reserved for the Commissioner. *Id.*

The ALJ provided specific and legitimate reasons to reject Dr. DeMasi's opinion, and those reasons are supported by substantial evidence in the record. As discussed in detail above, the record does not support the debilitating symptoms Plaintiff testified to nor the extreme limitations Dr. DeMasi provided. For instance, though Dr. DeMasi listed Plaintiff's frequent seizures and migraines as part of the basis for her assessment, as explained above, the record shows sparse and inconsistent treatment as well as improved symptoms with proper medication management. Dr. DeMasi's opinion that Plaintiff is completely unable to stand, walk, lift, carry, or use her upper extremities also does not find support in the record. As the ALJ noted, Plaintiff presented to several exams with a normal gait and full range of motion. While Plaintiff had bilateral carpal tunnel syndrome and polyneuropathy consistent with her history of poorly

controlled diabetes, her recent treatment records indicated full elbow flexion, elbow extension, wrist extension, finger abduction, and finger flexion in both upper extremities. Dr. DeMasi cited to Plaintiff's poor vision, but Plaintiff's eye doctor assessed no functional limitations related to Plaintiff's vision, including that Plaintiff maintains the ability to read, write, use a computer screen, and perform other tasks that require fine visual acuity. Tr. 1165–66. The ALJ did not err in rejecting Dr. DeMasi's opinion based on a lack of support and multiple inconsistencies in the record.

### III. Lay Witness Testimony

Plaintiff argues the ALJ failed to identify germane reasons to reject two lay witness statements. Pl.'s Br. 32. Plaintiff's friend filled out a third-party function report regarding Plaintiff's limitations and daily activities. Tr. 410–17. Plaintiff's caregiver reported that she assists Plaintiff with personal care, housekeeping, and errands for 20.5 hours per week. Tr. 445–46. Both reports generally mirrored Plaintiff's own testimony regarding her limitations and daily activities. Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless she gives germane reasons to reject their testimony. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). "An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with the medical record is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211,1218 (9th Cir. 2005).

The ALJ gave the above lay witness reports some weight, explaining that "while these individuals have had ample opportunity to observe [Plaintiff's] symptoms, the suggested level of limitation is inconsistent with the record as a whole, including mostly normal examination findings." Tr. 60.

This inconsistency is a germane reason for assigning partial weight to the lay witness reports. As explained above, substantial evidence supports the ALJ's conclusion that Plaintiff's symptoms are not as severe as alleged. The ALJ referred to the same inconsistency between Plaintiff's symptom allegations and the medical record to discount the lay witness reports here; namely, Plaintiff's numerous exams that showed mostly normal findings. Tr. 60. The ALJ therefore did not err in assigning some weight to the lay witness reports based on inconsistencies with the medical record. And even if the ALJ's reasoning was insufficient, the error is harmless. Because the lay witness reports here largely mirror Plaintiff's symptom testimony, "the same evidence that the ALJ referred to in discrediting [Plaintiff's] claims also discredits the lay witness's claims." *Molina*, 674 F.3d at 1122 (cleaned up) (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

## **CONCLUSION**

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.


DATED this 29th day of March, 2023.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge